# 26-

# United States Court of Appeals

*for the*

# Second Circuit

OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM,

*Plaintiff-Respondent,*

– v. –

ELON R. MUSK, ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, EXCESSION, LLC and JARED BIRCHALL,

*Defendants-Petitioners.*

PETITION FOR REVIEW OF ORDER GRANTING CERTIFICATION OF CLASS FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK NO. 1:22-CV-03026-ALC-GWG

## DEFENDANTS' PETITION FOR PERMISSION TO APPEAL PURSUANT TO FED R. CIV. P. 23(f)

DEREK L. SHAFFER
RACHEL FRANK QUINTON
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
derekshaffer@quinnemanuel.com
rachelquinton@quinnemanuel.com

ALEX SPIRO
SARAH HEATON CONCANNON
DAVID M. COOPER
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
(212) 849-7000
alexspiro@quinnemanuel.com
sarahconcannon@quinnemanuel.com
davidcooper@quinnemanuel.com

April 14, 2026

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Petitioner Excession LLC hereby states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT.......................................................................1

QUESTION PRESENTED .............................................................................3

STATEMENT OF FACTS .............................................................................3

      A.    Factual Background ........................................................................3

      B.    Procedural Background....................................................................6

STANDARD OF REVIEW .............................................................................7

ARGUMENT.................................................................................................7

I.     THE DISTRICT COURT MANIFESTLY ERRED IN CERTIFYING A CLASS BECAUSE OKF IS SUBJECT TO A UNIQUE NON-RELIANCE DEFENSE THAT THREATENS TO DOMINATE THIS LITIGATION .......................................................................................7

      A.    OKF Is Subject To The Unique Algorithmic Trading Defense............8

      B.    The Unique Defense Of Non-Reliance Defeats Typicality And Will Dominate This Litigation ..........................................................13

      C.    The District Court's Analysis Of The Defense Was Manifestly Insufficient..................................................................................17

II.    THE DISTRICT COURT'S MANIFEST ERROR WARRANTS RULE 23(f) REVIEW..................................................................................19

CONCLUSION AND RELIEF SOUGHT .......................................................20

STATEMENT OF RELATED CASES.............................................................21

CERTIFICATE OF COMPLIANCE................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)....................................................................................8

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)....................................................................................8

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................................8, 16

*Black v. Finantra Capital, Inc.*,
  418 F.3d 203 (2d Cir. 2005).......................................................................8

*City of Livonia Emps.' Ret. Sys. v. Wyeth*,
  284 F.R.D. 173 (S.D.N.Y. 2012)..............................................................19

*Cohen v. Laiti*,
  98 F.R.D. 581 (E.D.N.Y. 1983) ................................................................15

*Desulma v. City of New York*,
  2001 WL 798002 (S.D.N.Y. July 6, 2001)...............................................12

*duPont v. Brady*,
  828 F.2d 75 (2d Cir. 1987)..........................................................................9

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner &
  Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990)..........................................................8, 15, 17

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)...................................................................................11

*Halliburton Co. v. Erica P. John Fund*,
  573 U.S. 258 (2014)...............................................................................9, 19

*Hasthantra v. CleanSpark, Inc.*,
  2025 WL 2717308 (S.D.N.Y. Sept. 24, 2025)......................................17, 18

ii

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004)....................................................................................7

*In re IMAX Sec. Litig.*,
  272 F.R.D. 138 (S.D.N.Y. 2010).......................................................................13

*Kamerman v. Ockap Corp.*,
  112 F.R.D. 195 (S.D.N.Y. 1986).......................................................................15

*Kline v. Wolf*,
  702 F.2d 400 (2d Cir. 1983).............................................................................14

*Kline v. Wolf*,
  88 F.R.D. 696 (S.D.N.Y. 1981).........................................................................15

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions
  Fin. Corp.*,
  282 F.R.D. 607 (N.D. Ala. 2012).......................................................................19

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
  601 U.S. 257 (2024)............................................................................................6

*In re Monster Worldwide, Inc. Sec. Litig.*,
  251 F.R.D. 132 (S.D.N.Y. 2008).......................................................................19

*In re Omnicom Grp., Inc. Sec. Litig.*,
  2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007)...................................................14

*In re Par Pharm. Secs. Litig.*,
  No. 06-cv-3226, Dkt. 286 (D.N.J. July 23, 2012).............................................19

*Salsitz v. Peltz*,
  210 F.R.D. 95 (S.D.N.Y. 2002).........................................................................14

*Schuh v. Druckman & Sinel, L.L.P.*,
  2010 WL 11590042 (S.D.N.Y. June 29, 2010).................................................12

*Steginsky v. Xcelera, Inc.*,
  2015 WL 1036985 (D. Conn. Mar. 10, 2015) ..................................................14

*Steginsky v. Xcelera, Inc.*,
  658 F. App'x 5 (2d Cir. 2016)...........................................................................14

*In re Vivendi Universal, S.A.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ..................................................................... 17, 18

*Weber v. United States*,
  484 F.3d 154 (2d Cir. 2007) .............................................................................7

*Weintraub v. Texasgulf Inc.*,
  564 F. Supp. 1466 (S.D.N.Y. 1983) ...............................................................15

## **Rule**

Fed. R. Civ. P. 23(f) ..................................................................... 1, 7, 11, 12, 19, 20

## PRELIMINARY STATEMENT

The district court (Carter, J.) certified a class with only one class representative whose investment manager admitted, unequivocally, it would have acted in the exact same way regardless of the alleged misrepresentations or omissions at issue. The result is a class representative with no viable claim for securities fraud. At the very least, it faces a strong, unique defense that will be the focus of a trial and likely doom the claims of the entire class. The district court's refusal to confront the lack of typicality is wrong as a matter of law. This Court should grant review under Rule 23(f) and reverse.

Oklahoma Firefighters Pension And Retirement System ("OKF") purports to represent a class of Twitter investors allegedly misled by Elon Musk. Yet when OKF's investment manager was asked whether, had it "known [the allegedly concealed] information about Twitter … would the algorithm still have sold at this price," it answered: "Yes, it would have sold at this price." Dkt. 165-3 (R. Yasenchak Dep. Tr. ("Intech Tr.")) at 130:9-15 (objection to form omitted). And when asked again, repeatedly, about whether the alleged misrepresentations or omissions mattered to OKF's sale of stock, its investment manager testified repeatedly that OKF's sole Class Period sale was "information indifferent": it would have sold the same shares, at the same price, on the same day, regardless of what Elon Musk disclosed or concealed.

1

The district court certified the class anyway. In a single paragraph addressing the most consequential typicality issue in the case, the court cited two inapposite cases, found OKF "typical enough," and moved on. It never referred to Intech's agnosticism to information like Musk's alleged misrepresentations. It never applied this Court's authority on unique defenses or asked the question that authority requires: does this defense threaten to become the focus of the litigation? And it never explained why absent class members should be saddled with a class representative that has conceded lack of reliance.

That is manifest error. This Court and district courts within this Circuit consistently hold that a unique defense of non-reliance belies the typicality required for class certification. That is especially true given the strength of the non-reliance defense here, based on OKF's own admissions. Indeed, the record already shows exactly what this litigation will look like: a battle over one question no other class member faces, consuming depositions, expert reports, and trial time, all to determine whether OKF's algorithm cared about a fraud that every other class member's claim assumes caused real harm. Thus, if this class action were to move forward, the parties would be litigating an individual claim in the guise of a class action. This Court's review is urgently needed to correct the district court's manifest error and to prevent the substantial prejudice to absent class members from having their claims

2

tied to a class representative that admits it would have made the exact same stock sale regardless of the alleged misrepresentations or omissions.

## QUESTION PRESENTED

Whether the district court erred in certifying a class as "typical enough" where the lead plaintiff's own investment manager testified that it would have made the identical sale regardless of what Defendants disclosed, establishing a unique non-reliance defense.

## STATEMENT OF FACTS

### A.    Factual Background

This case arises from Elon Musk's acquisition of Twitter common stock in early 2022 and alleged failure to timely disclose his stake to the market.  Musk's holdings crossed the 5% disclosure threshold on March 14, 2022, triggering a ten-day window to file a Schedule 13D, which Defendants allegedly allowed to expire without filing.  Dkt. 74 (First Am. Compl. ("FAC")) ¶¶ 137-39; Dkt. 164 (Defs' Opp. to Class Certification) at 3.  The Class Period runs from March 25, 2022—the first day after the alleged expiration of that window—through April 4, 2022.  Dkt. 74 (FAC) ¶¶ 16, 22.

OKF made a single Class Period trade: a March 28, 2022 sale of 14,367 shares at $39.09 per share.  Dkt. 10-1 (OKF Transaction Info.) at 4.  That trade was not executed by OKF's own personnel but instead through Intech Investment Management LLC, a quantitative fund that "use[s] algorithms in a systematic way

3

to identify which stocks to own and how to not only buy but also sell those stocks." Dkt. 165-3 (Intech Tr.) at 25:15-21. Intech had "full discretion to trade on [OKF's] behalf" and made "trading decisions on [OKF's] behalf without providing notice or getting prior authority." *Id.* at 63:13-65:13. OKF "[did]n't have any documents that we relied upon related to the transactions in Twitter" and relied entirely on "the sole discretionary authority of [its] investment manager INTECH." Dkt. 165-4 (C. Rankin Dep. Tr. ("Rankin Tr.")) at 93:21-94:2.

Intech's algorithm triggered the March 28, 2022 sale because that date fell on a routine rebalancing day—one of six tranches that rebalanced every six days— without reference to any Twitter-specific information. Dkt. 165-3 (Intech Tr.) at 37:5-19, 43:21-44:1, 92:13-19. Intech's algorithm makes "no use of fundamental base or human involvement" and is "information indifferent." *Id.* at 35:22-36:3, 135:4-7.

At his deposition, Intech's representative confirmed repeatedly that the algorithm would have executed the identical sale regardless of what was known about the alleged fraud:

- "Q. … [I]s it right to say that in making this March 28, 2022 sale of Twitter shares, Intech did not consider any company specific information about Twitter? … The Witness: Yes." *Id.* at 129:15-20 (objection to form omitted).

4

- "Q. Had Intech known information about Twitter … would the algorithm still have sold at this price? … The Witness: Yes, it would have sold at this price." *Id.* at 130:9-15 (objection to form omitted).

- "Q. So had Intech known, for example, that an investor had taken an ownership interest of over 5 percent in Twitter, would the algorithm still have sold at the same price it sold at despite Intech's knowledge of that information? … The Witness: It would have sold, yeah, because that's not part of our process." *Id.* at 130:17-24 (objection to form omitted).

- "Q. And just say, for example, had Intech known that Mr. Musk was going to acquire Twitter but the price was still $39.09, would the algorithm still have sold at that price that day on March 28? … The Witness: Yes." *Id.* at 131:2-7 (objection to form omitted).

- "Q. So no matter what information had been known on March 28 when the algorithm sold 14,367 Twitter shares at a price of $39.09 per share, the algorithm still would have sold those 14,367 Twitter shares at that price per share? … The Witness: Yes." *Id.* at 131:24-132:6 (objection to form and unidentified objection omitted).

- "Q. … [I]s it also correct to say that had Intech known that Mr. Musk had taken an ownership interest of over 5 percent in Twitter on March 28, 2022, the algorithm still would have sold those shares at that price? … The Witness:

Yes." *Id.* at 137:3-10 (objection to form omitted); *see also id.* at 137:12-17 (same for Mr. Musk taking a board seat at Twitter).

**B.    Procedural Background**

OKF was appointed Lead Plaintiff in November 2022.  Dkt. 23 (Order Appointing Lead Pl.) at 14.    After the Supreme Court held in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024), that "[p]ure omissions are not actionable under Rule 10b-5(b)," *id.*, OKF filed an Amended Complaint on April 30, 2024, alleging a scheme to "conceal[] Musk's steadily increasing ownership in Twitter and misled investors through misdirection and half-truths."  Dkt. 74 (FAC) ¶¶ 227-33.

OKF moved for class certification, seeking to certify a class of all persons who sold Twitter common stock, call options, and/or purchased put options during the Class Period.  Dkt. 141 (OKF's Class Certification Mot.) at 1.  Defendants opposed, arguing that Intech's deposition testimony conclusively rebutted any supposed presumption of reliance, and that OKF was therefore subject to a unique non-reliance defense fatal to typicality.  Dkt. 164 (Defs' Opp. to Class Certification) at 9-17.

On March 31, 2026, the district court granted OKF's motion and certified the proposed class, addressing the typicality issue in a single paragraph.  Dkt. 241 (Class Certification Order) ("Order") at 14-15.  The court did not quote or engage with

Intech's deposition testimony or information agnosticism. *Id.* Defendants timely filed this petition.

## STANDARD OF REVIEW

Under Rule 23(f), this Court has "'unfettered discretion' to grant or deny permission to appeal based on 'any consideration that the court of appeals finds persuasive.'" *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 76 (2d Cir. 2004) (quoting Fed. R. Civ. P. 23(f), advisory committee's notes). Where a district court's ruling is "manifestly erroneous, the parties would profit from its immediate review in this court." *Weber v. United States*, 484 F.3d 154, 158 (2d Cir. 2007). "Rule 23(f) affords the courts of appeals an opportunity to intervene early to correct lower-court errors in class certification, which, if not corrected at that stage, would result in wasteful proceedings, often requiring re-litigation." *Id*. at 159-60.

## ARGUMENT

**I.     THE DISTRICT COURT MANIFESTLY ERRED IN CERTIFYING A CLASS BECAUSE OKF IS SUBJECT TO A UNIQUE NON-RELIANCE DEFENSE THAT THREATENS TO DOMINATE THIS LITIGATION**

The district court certified as class representative an institutional investor whose own investment manager testified under oath that it would have executed the exact same sale of Twitter stock regardless of what Musk disclosed, or failed to disclose, about his ownership stake. That testimony severs the causal chain between the alleged fraud and OKF's specific sale, establishing a non-reliance defense that is

unique to OKF, grounded in its own witness's sworn words, and inapplicable to most other class members.

Under this Court's precedent, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation" because "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). That is exactly the case here. The district court never engaged with the testimony, never applied the governing standard, and never explained why this defense was insufficient. That failure warrants immediate review.

**A.  OKF Is Subject To The Unique Algorithmic Trading Defense**

To sustain a securities fraud claim, a plaintiff must prove reliance on the alleged misrepresentation. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-63 (2013). OKF invokes the *Basic* and *Affiliated Ute* presumptions of reliance, which allow reliance to be presumed class-wide if certain conditions are satisfied. Dkt. 141 (OKF's Class Certification Mot.) at 14-23; *see Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988); *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972). But those presumptions are rebuttable. *See Black v. Finantra Capital, Inc.*, 418 F.3d 203, 209 (2d Cir. 2005). To rebut the *Basic* presumption, the defendant can show that the plaintiff would have traded "even had

8

[it] been aware that the stock's price was tainted by fraud." *Halliburton Co. v. Erica P. John Fund* ("*Halliburton II*"), 573 U.S. 258, 269 (2014). The same test applies in rebutting the *Affiliated Ute* presumption: there is no reliance where "even if the material facts had been disclosed, plaintiff's decision as to the transaction would not have been different from what it was." *duPont v. Brady*, 828 F.2d 75, 78 (2d Cir. 1987) (quotations omitted).

The rebuttal standard maps directly onto what Intech conceded in its testimony. OKF made a single sale of Twitter stock during the Class Period, executed not by a human investor exercising judgment about market conditions, company disclosures, or Musk's statements, but by Intech through a purely quantitative, algorithm-based strategy. *See* Dkt. 10-1 (OKF Transaction Info.) at 4; Dkt. 165-3 (Intech Tr.) at 35:22-36:3, 63:13-65:13. Intech's 30(b)(6) designee, Richard Yasenchak—who testified that he was "fully an expert" and "fully aware" with respect to Intech's "trading algorithm" and "any impact that the alleged misrepresentations in the complaint in this case had on Intech's trading algorithm," Dkt. 165-3 (Intech Tr.) at 18:1-17—gave unequivocal testimony refuting reliance on any alleged misstatements or omissions. He stated explicitly that any information about Mr. Musk's acquisition of Twitter stock or taking a board seat would not have affected OKF's sale of Twitter stock in any way. *See*, *e.g.*, *id*. at 135:8-13 ("[H]ad Intech known that Mr. Musk had taken an ownership interest of over 5 percent in

9

Twitter the algorithm still would have sold those shares at that price on April 5?" Answer: "Yes."); *id.* at 135:4-7 ("Is it fair to characterize the March 28, 2022 and April 5, 2022 sales of Twitter shares as information indifferent?" Answer: "I think that's fine."); *see also supra* at 4-6. In sum, the witness confirmed that OKF's sole Class Period sale was "information indifferent," and that no specific information about Musk or Twitter, including Musk's acquisition of a greater than five percent stake, his plans to acquire Twitter, or his intention to join Twitter's board, would have influenced the algorithm's decision to sell. Dkt. 165-3 (Intech Tr.) at 96:2-6; 131:2-7; 131:17-22; 135:4-13.

This is precisely the showing *Halliburton II* and *duPont* contemplate: OKF would have sold Twitter stock at the same price on the same day regardless of whether the price was accurate or fraud-tainted. The algorithm did not sell because the market price was wrong or because Musk had concealed his ownership or because his tweets created a false impression of his intentions. It sold because a mechanical rebalancing trigger fired on March 28, 2022, exactly as it would have on any other rebalancing day under any other disclosure regime. *Id.* at 37:5-19, 43:21-44:1, 92:13-19. No version of the truth, had it been known, would have changed the outcome. That is the definition of non-reliance.

Moreover, this non-reliance defense applies to OKF alone. No other class member's investment manager has testified under oath that its trading strategy was

10

structurally indifferent to company-specific information about Twitter or Musk, or that it would have made the identical sale at the identical price regardless of what Defendants disclosed. That asymmetry is the hallmark of a unique defense.

The district court never engaged with the deposition testimony or explained why it was insufficient to raise a meritorious unique defense. The court received Intech's 30(b)(6) testimony in full. It knew that Intech's own designated expert had testified that the sales were "information indifferent," that no information about Musk would have influenced the algorithm, and that OKF would have made the identical sale regardless of what Musk disclosed. *See supra* at 4-6. The court never quoted a word of that testimony, never analyzed it, and never explained why repeated, unequivocal answers from OKF's own witness were insufficient to establish a unique defense. A court conducting the "rigorous analysis" Rule 23 requires cannot simply ignore the sworn testimony that is the foundation of the defense it is purporting to evaluate. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Instead, the district court brushed aside the non-reliance defense as to OKF in a few sentences, based on a misunderstanding of the relevant law. Order at 12-13. The court stated that the algorithm used market price as an input, and "the algorithm assumes that the information in the marketplace that affects a stock's price is true." *Id*. But even putting aside that there is no evidence that the algorithm "assumes" anything about the information in the marketplace, the question for purposes of

11

reliance is not whether a plaintiff cares about the market price or generally believes in the truth of information in the marketplace. That describes essentially every person who trades stock, and if that were enough, it would make the reliance requirement meaningless. Rather the relevant question—under *Halliburton II*, *duPont*, and basic principles of the meaning of reliance—is whether the plaintiff would have made the same trade if it knew the supposed truth behind the alleged fraud. By its own repeated concessions, OKF would have done so. In short, OKF concededly did not rely on any information Defendants provided or did not provide, and it therefore lacks a viable claim for securities fraud.

Finally, Plaintiff submitted a reply declaration in a transparent attempt to clean up the concessions in the Intech deposition, but this reply declaration was improper and the district court did not cite it; and thus it provides no basis for affirmance (let alone denial of Rule 23(f) review). Plaintiff's counsel attended the deposition, objected to the form of questions, and conducted cross-examination—without seeking to clarify any of the questions now claimed to be unclear. *See* Dkt. 165-3 (Intech Tr.) at 138:7-141:4. A post-hoc declaration submitted in reply briefing over two months after clear, unequivocal deposition testimony, without timely errata, is precisely the kind of attempt to "tailor [] testimony to meet specific deficiencies" that courts in this Circuit reject. *Desulma v. City of New York*, 2001 WL 798002, at *5 (S.D.N.Y. July 6, 2001); *see Schuh v. Druckman & Sinel, L.L.P.*, 2010 WL

12

11590042, at \*7 (S.D.N.Y. June 29, 2010). In any event, Plaintiff's reply declaration does not recant the core admission that if OKF had known the truth, it would have done the exact same thing. Dkt. 194-2 (R. Yasenchak Decl.) ¶¶ 4-6. *Halliburton II* and *duPont* ask what OKF would have done knowing the price was *tainted*—i.e., knowing the truth was *not* in the market price. The declaration addresses only the opposite scenario: what if the truth *were* in the price. Those are not the same question, and answering the latter says nothing about the former. And to the extent OKF claims it would not make an illegal trade, that is not the *Halliburton II* and *duPont* question either. *Halliburton II* and *duPont* do not require a showing that a plaintiff would make an illegal trade; they ask whether OKF would have traded even knowing the truth. OKF would and that should be the end of the matter.

## B. The Unique Defense Of Non-Reliance Defeats Typicality And Will Dominate This Litigation

The non-reliance defense that OKF faces, based on its investment manager's own testimony, precludes OKF from acting as the representative of a class. A plaintiff that cannot individually state the claim it seeks to litigate on behalf of a class cannot serve as class representative. *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 147 (S.D.N.Y. 2010) ("[I]t is axiomatic that a putative class representative must be able to individually state a claim against defendants, even though he or she purports to act on behalf of a class.") (quotation marks omitted). Moreover, as to typicality, the court need not determine whether a unique defense ultimately would prevail, but

13

only whether the plaintiff's claim is "subject to sharp attack." *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983); *see also*, *e.g.*, *Steginsky v. Xcelera, Inc.*, 2015 WL 1036985, at \*4 (D. Conn. Mar. 10, 2015), *aff'd*, 658 F. App'x 5 (2d Cir. 2016) ("It is not necessary to 'definitively resolve whether such defenses would succeed on their merits'; certification is routinely refused when the court is 'confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff.'") (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 2007 WL 1280640, at \*4 (S.D.N.Y. Apr. 30, 2007)).

This Court has twice held that a unique defense based on a class representative's non-reliance warrants denial of class certification. In *Kline*, this Court held that a credibility issue for the class representatives was sufficient to deny class certification because "their incredibility might support a rebuttal unavailable against many other class members, i.e., that plaintiffs did not significantly rely on the integrity of the market or that, even if they had known of the alleged misrepresentation, they would still have purchased the stock." 702 F.2d at 403. Likewise, in *Steginsky*, this Court affirmed the district court's holding that "Steginsky's unique susceptibility to the defense of non-reliance rendered her an unsuitable representative plaintiff." *Steginsky v. Xcelera, Inc.*, 658 F. App'x 5, 8 (2d Cir. 2016). District courts in this Circuit also have held repeatedly that precisely this kind of unique non-reliance defense defeats typicality. *See Salsitz v. Peltz*, 210

14

F.R.D. 95, 98 (S.D.N.Y. 2002) ("Here, it is not logical to presume such reliance, as Plaintiff himself admits that the [*sic*] did not rely on the allegedly misleading tender offer materials. … Plaintiff's Section 14(e) claim thus is subject to unique defenses.") (citations omitted); *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 198 (S.D.N.Y. 1986) ("[W]here as here, a proposed class representative did not rely on the allegedly misleading proxy statement or on the integrity of the market, the proposed representative is subject to unique defenses and may not represent the class."); *Cohen v. Laiti*, 98 F.R.D. 581, 584 (E.D.N.Y. 1983) ("[I]t is clear that [plaintiff's] investment strategy invites rebuttal and that the time likely to be consumed thereby is sufficient to justify our finding that this strategy gives rise to a unique defense requiring a denial of class representative status[.]"); *Weintraub v. Texasgulf Inc.*, 564 F. Supp. 1466, 1471 (S.D.N.Y. 1983) (denying certification where "plaintiff was a sophisticated speculative trader whose unusual trading activities will give rise to unique defenses"); *Kline v. Wolf*, 88 F.R.D. 696, 699 (S.D.N.Y. 1981) (plaintiff atypical where subject to "'unique defenses' on the issue of reliance inapplicable to other purported class members"), *aff'd*, 702 F.2d 400 (2d Cir. 1983). Just as in these cases, the unique non-reliance defense against OKF belies typicality.

Furthermore, the non-reliance defense here unquestionably "threaten[s] to become the focus of the litigation." *Gary Plastic*, 903 F.2d at 180. The record already shows exactly what this litigation will look like: a protracted battle over

whether OKF's investment manager relied on the fraud, fought through depositions, competing declarations, briefing, and ultimately trial—all of it specific to OKF and irrelevant to every other class member's claim.

The pre-trial record proves the point. Defendants deposed Intech's 30(b)(6) designee at length on the algorithm's structure and its relationship to the alleged fraud. *See generally* Dkt. 165-3 (Intech Tr.). Plaintiff responded by submitting a new declaration from the same witness over two months later, attempting to reinterpret answers he had given clearly and without objection. *See* Dkt. 194-2 (R. Yasenchak Decl.). Defendants then sought leave to file a sur-reply (Dkt. 202), which Plaintiff opposed and sought further briefing in the event it was permitted (Dkt. 203). All of this occurred before a single merits issue was litigated, and all of it concerned one question: whether OKF's algorithm relied on the fraud. That is precisely what *Gary Plastic* warns against.

Looking forward, the dominance problem only grows. At trial, Defendants will be entitled to challenge OKF's reliance directly: confronting Intech's testimony, the declaration, and the algorithm's mechanics before the jury. *See Basic*, 485 U.S. at 249 n.29 (stating proof of reliance "is a matter for trial"). OKF will devote enormous resources responding, calling Intech witnesses, retaining experts on algorithmic trading, and litigating the *Halliburton II* rebuttal question in full. None of that has anything to do with whether Musk violated his disclosure obligations or

16

whether the other thousands of class members were harmed. Absent class members will be poorly served by a representative whose own claim is consumed by a defense that does not touch theirs.

## C. The District Court's Analysis Of The Defense Was Manifestly Insufficient

The district court never applied the *Gary Plastic* "threaten to become the focus" standard, 903 F.2d at 180, and never engaged with the controlling authority Defendants presented. The court's entire typicality ruling on the unique non-reliance defense consisted of one paragraph. Order at 14-15. It cited *Hasthantra v. CleanSpark, Inc.*, 2025 WL 2717308 (S.D.N.Y. Sept. 24, 2025), for a flexible approach to unique defenses; quoted *In re Vivendi Universal, S.A.*, 242 F.R.D. 76 (S.D.N.Y. 2007), for an inapposite proposition; concluded in a single sentence that OKF's claims were "typical enough"; and stopped there. Order at 14-15. That is not a rigorous analysis.

To begin with, the district court misplaced reliance on *Hasthantra*. The court cited *Hasthantra* for the proposition that the unique defenses rule is not "rigidly" applied, Order at 14, but *Hasthantra* itself makes clear the rule applies "where a full defense is available against an individual plaintiff's action." 2025 WL 2717308, at *5. No such full defense existed in *Hasthantra*. Defendants there argued that the plaintiff was atypical on two grounds: he made additional stock purchases after the disclosure and certain alleged misstatements occurred after his last purchase. *Id.* at

17

*5-6. *Hasthantra* rejected both. Post-disclosure purchases do not bear on whether a plaintiff relied on the market's integrity before the corrective information was disclosed. *Id.* And because the later misstatements concerned the same course of conduct as the earlier ones, their occurrence after the plaintiff's last purchase did not render him atypical. *Id.* at *6. On that record, defendants had not demonstrated even "an arguable defense of non-reliance on the market[.]" *Id.* (quotation marks omitted). Here, in contrast, there is not only an "arguable" non-reliance defense but a meritorious one, as discussed above. *Supra* at 8-11.

The court also misapplied *Vivendi*, which addresses a timing problem entirely distinct from a non-reliance defense. The district court quoted *Hasthantra*'s citation to *Vivendi*, 242 F.R.D. at 87, for the proposition that "where … [a] plaintiff[] alleges that [his] losses were the result of a sustained course of conduct that propped up defendant's stock price throughout the class period, the class may be represented by an individual who purchased shares prior to the close of the class period." 2025 WL 2717308, at *6. That quote addresses a timing and standing problem: whether a plaintiff who stopped trading before the class period ended can still represent class members who traded later. It says nothing about whether a plaintiff whose investment manager has testified to indifference to fraud-related information can represent class members who traded for ordinary reasons. Applying *Vivendi* to OKF's situation is a category error: OKF's problem is not when it traded (it traded

squarely within the Class Period) but whether its specific sale was causally connected to the alleged fraud at all.[*]

## II. THE DISTRICT COURT'S MANIFEST ERROR WARRANTS RULE 23(f) REVIEW

The district court's error in disregarding a clear and meritorious defense of non-reliance unique to the class representative warrants this Court's review. Absent review now, a class action will proceed with a fatally defective class representative. The result will be an enormous waste of time and resources of the parties and the court, as they litigate the claims through trial and appeal, only for this Court to decide the same issue it can resolve now. In addition, if a class goes forward now, there is a substantial risk of prejudice to the entire class. All absent class members will be saddled with a class representative that faces a defense likely to defeat the claims at trial or on appeal, even though that defense does not apply to them at all. There is no reason to put the entire class in the position of losing their claims when this Court

---

[*] The court did not rely upon the cases Plaintiff cited below (Dkt. 193 (OKF's Class Certification Reply) at 5): *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173 (S.D.N.Y. 2012), *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132 (S.D.N.Y. 2008), *In re Par Pharm. Secs. Litig.*, No. 06-cv-3226, Dkt. 286 (D.N.J. July 23, 2012), and *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 282 F.R.D. 607 (N.D. Ala. 2012). And for good reason. Defendants have exactly what was missing in those cases: sworn Rule 30(b)(6) testimony from Intech's own designated expert establishing that the algorithm was information-indifferent and would have executed the same sale regardless of what Musk disclosed. Moreover, all these cases predate *Halliburton II*'s clarification that the *Basic* presumption is rebutted where a plaintiff would have traded "even had [it] been aware that the stock's price was tainted by fraud." 573 U.S. at 269.

can decide now whether the non-reliance defense is potentially meritorious and defeats typicality.  Finally, it jumps out that this district court erred by failing to grapple with binding precedent or even the relevant deposition testimony.  This Petition thus fits the very purpose of Rule 23(f): to remedy wasteful, prejudicial, and clearly erroneous certification decisions.

## CONCLUSION AND RELIEF SOUGHT

This Court should grant the petition for permission to appeal.

Dated:  April 14, 2026

Respectfully submitted,

_/s/  Alex Spiro_

| | |
|---|---|
| Derek L. Shaffer | Alex Spiro |
| Rachel Frank Quinton | Sarah Heaton Concannon |
| QUINN EMANUEL URQUHART | David M. Cooper |
| & SULLIVAN, LLP | QUINN EMANUEL URQUHART |
| 555 13th Street NW, Suite 600 | & SULLIVAN, LLP |
| Washington, D.C. 20004 | 295 Fifth Avenue |
| (202) 538-8000 | New York, New York 10016 |
| derekshaffer@quinnemanuel.com | (212) 849-7000 |
| rachelquinton@quinnemanuel.com | alexspiro@quinnemanuel.com |
| | sarahconcannon@quinnemanuel.com |
| | davidcooper@quinnemanuel.com |

*Counsel for Defendants-Petitioners*

20

## **STATEMENT OF RELATED CASES**

Defendants-Petitioners are not aware of any related cases pending in this Court.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 5 and 32, the foregoing petition is in 14-point, proportionally spaced Times New Roman type and contains 4,727 words.

Dated:  April 14, 2026 _/s/ Alex Spiro_

22

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
OKLAHOMA FIREFIGHTERS PENSION  :
AND RETIREMENT SYSTEM,  :
            :  **1:22-cv-03026 (ALC)**
        **Plaintiff,** :
            :  <u>**OPINION & ORDER**</u>
   **-against-**      :
            :
ELON R. MUSK ET AL.    :
            :
   **Defendants.**    :
-------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Oklahoma Firefighters Pension and Retirement System brings this putative class action alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 against all Defendants and alleging violations of Section 20(a) of the Exchange Act against Defendants Elon Musk and Jared Birchall. Plaintiff now seeks to certify the class.

For the reasons that follow, the Court finds that the proposed class meets the requirements of Rule 23(a) and the relevant requirements of Rule 23(b) of the Federal Rules of Civil Procedure. Plaintiff's motion to certify is granted. Accordingly, Plaintiff's Motions to appoint Plaintiff as the Class Representative and to appoint Bernstein Litowitz as Class Counsel are granted.

1

## BACKGROUND

### A. Factual Background[1]

Plaintiff is a public pension fund that provides retirement allowances and other benefits to firefighters in Oklahoma. Amended Complaint, ECF No. 74 ¶10. Plaintiff currently manages approximately $3.4 billion in assets on behalf of over 26,000 participants. *Id.* Plaintiff sold more than 14,000 shares of Twitter[2] stock on the New York Stock Exchange during the proposed Class Period, March 25, 2022 through April 4, 2022, and alleges Defendants violated federal securities laws during this period. *Id.*

Defendant Elon Musk is the owner of what was known as Twitter (now X). *Id.* ¶32. Defendant Elon Musk Revocable Trust ("Musk Trust") is a trust that is controlled by Musk and holds Twitter common stock. *Id* at ¶34. Defendant Excession LLC is Musk's family office and is responsible for Musk's purchases of Twitter stock and ultimately Twitter itself. *Id.* ¶35. Defendant Jared Birchall is a former banker and is known as Musk's "right hand man." *Id.* ¶36. Since 2016, he has been Musk's wealth manager and managing director of Excession LLC. Birchall also has power of attorney over the Musk Trust. *Id.*

Plaintiff alleges that starting in January 2022, the Defendants devised a scheme for Elon Musk to secretly acquire a massive activist interest in Twitter at the lowest prices possible through an elaborate trading strategy. *Id.* ¶¶82-87, 111, 153, 170, 175, 200-02, tbl. 3. The Class Period starts on March 25, 2022—the first day after Defendants allegedly violated their disclosure obligations regarding Musk's ownership and activist interests in Twitter. *Id.* ¶141, tbl. 3. Over the next ten days, Plaintiff asserts Musk continued to secretly amass over 13 million

---

[1] The following facts are taken from Plaintiff's Amended Complaint and are presumed true for the purposes of this action.

[2] The Court, in following Plaintiff's Amended Complaint, will refer to the company as Twitter, the name at the time of the allegations.

additional Twitter shares. *Id*. ¶¶141-46, 174-75, tbl. 3. Defendants' refusal to disclose Musk's interests artificially deflated the prices of Twitter's stock, which allowed Musk to secretly maximize his ownership stake during the Class Period and saved him over $200 million. *Id*. ¶¶83-96, 141-46, 157, 159, 174-75. Investors who sold during the Class Period were cheated out of the true value of those securities. *Id*. ¶¶146-47.

### B.  Procedural History

Plaintiff filed a Complaint against Defendants on November 21, 2022, asserting causes of action under Sections 10(b) and 20(a) of the Exchange Act. ECF No. 33. On April 12, 2024, the United States Supreme Court published *Macquarie Infrastructure Corp. v. Moab Partners, L.P.,* 601 U.S. 257 (2024), which held that "[p]ure omissions are not actionable under Rule 10b–5(b)." Id. at 260. In light of *Macquarie*, the Parties agreed that Plaintiff could file an Amended Complaint. ECF No. 69. On April 30, 2024, Plaintiff filed its Amended Complaint. ECF No. 99.

On March 28, 2025, this Court granted in part, and denied in part, Defendants' Motion to Dismiss the Amended Complaint. ECF No. 118. The Court denied the Motion to the extent the 10(b)-5(a) and (c) claims are predicated on the following acts: (1) the improper Schedule 13G filing; (2) Musk's misleading tweets about Twitter's future, and (3) the carrying out of a coordinated trading strategy to silently build up Musk's position in Twitter. *Id.* at 42. The Court denied the Motion to the extent the 10(b)-5(b) claim is predicated on the following statements: (1) Musk's March 26, 2022 "Haha that would [be] sickkk"; and (2) Musk's March 26, 2022 "Am giving serious thought to this" tweet. *Id.* The Court also denied the motion as to Plaintiff's Section 20(a) claims. *Id.* The Court granted the Motion to the extent the 10(b)-5(a) and (c) claims are predicated on the allegedly deceptive act of Defendants making false statements of legal blessing as to their trading strategy. *Id.*  The Court also granted the Motion to the extent the

10(b)-5(b) claim is predicated on the following statements: (1) Musk's March 25, 2022 Twitter poll; (2) Musk's March 26, 2022 "What should be done?" tweet; and (3) Musk's March 26, 2022 "Is a new platform needed?" tweet. *Id.*

On June 23, 2025, Plaintiff filed a Motion to Certify a Class and moved to appoint Plaintiff as the Class Representative and Bernstein Litowitz as Class Counsel. ECF No. 140. On August 22, 2025, Defendants filed their Motion in Opposition. ECF No. 164. On October 7, 2025, Plaintiff filed its Reply. ECF No. 193. On October 14, 2025, Defendants filed a letter motion seeing permission to file a Proposed Sur-Reply. ECF No. 201. On October 16, 2025, Plaintiff filed its response to this letter motion. ECF No. 203. On October 23, 2025, the Court granted leave for Defendants to file their Proposed Sur-Reply. ECF No. 211. On October 24, 2025, Defendants filed their Sur-Reply. ECF No. 214.

### C. Proposed Class Definition

Plaintiff seeks to certify the following class:

All persons or entities who sold Twitter common stock and/or call options and/or purchased put options between March 25, 2022 and April 4, 2022, inclusive (the 'Class Period') and were damaged thereby (the "Class"). ECF No. 40 at 1.

## DISCUSSION

### I. Class Certification

### A. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class certification. That is, plaintiffs must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

4

the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To meet the requirements of Rule 23(a), "plaintiffs in the proposed class must demonstrate that they satisfy four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007).

In addition to the requirements of Rule 23(a), plaintiffs must demonstrate that a class is maintainable under Rule 23(b). Under Rule 23(b)(3), the court must decide whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and whether a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

### B. Numerosity

The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 244–45 (2d Cir. 2007). Although, there is no bright line rule setting a requisite number of class members for certification, "numerosity is presumed for classes larger than forty members.*" Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.,* 772 F.3d 111, 120 (2d Cir. 2014). Plaintiff's proposed class composes of thousands of investors, which is significantly above the 40-plaintiff threshold. Defendants do not argue against numerosity. Therefore, the numerosity requirement is easily satisfied.

### C. Adequacy

Adequacy requires that the class representatives "will fairly and adequately protect the interests of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 267 (2d Cir. 2006) (internal

quotation marks omitted). To determine adequacy, courts evaluate "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Class certification may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1077–78 (2d Cir. 1995) (quotation marks and alterations omitted). Courts may also consider "the honesty and trustworthiness of the named plaintiff." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Plaintiff contends that its interests are aligned with those of other Class members because it suffered the same harm as a result of Defendants' alleged scheme. Pl's Mot. at 10. Plaintiff does not have any conflicts with other Class members. *Id.* Per Executive Director Chase Rankin's Declaration, Plaintiff understands the fiduciary duties it will owe the rest of the Class throughout the pendency of the case. Ex. B ¶3. Plaintiff has actively prosecuted the case so far, retaining attorneys who have vigorously defended the Class's interests. Sinderson Declaration ¶3; Ex. C. Defendants do not challenge the adequacy requirement. This requirement is satisfied.

### D. Commonality

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact," *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007), "truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350. Plaintiffs need only "demonstrate that the class members 'have

6

suffered the same injury." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks and alterations omitted). In securities cases, commonality is satisfied where plaintiffs allege that class members have been injured by similar material misrepresentations and omissions. *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 276 (S.D.N.Y. 2008).

Plaintiff asserts that there are numerous common questions of facts and law including: (i) whether Musk's statements were materially misleading when made; (ii) whether Defendants engaged in a scheme to deceive Twitter investors; (iii) whether Defendants acted with scienter; (iv) whether the prices of Twitter securities were artificially depressed during the Class Period due to Defendants' scheme and misstatements; (v) whether Defendants' scheme and Musk's misrepresentations caused Class members to suffer economic losses when the truth was revealed; and (vi) whether Musk and Birchall were "control persons" within the meaning of Section 20(a) of the Exchange Act. Pl. Mot. at 8. Defendants do not specifically attack the commonality requirement of Rule 23(a). The Court finds that Plaintiff has satisfied commonality.

### E. Implied Requirement of Ascertainability

To certify a class, the Second Circuit has some implicit requirements beyond Rule 23, including ascertainability. Ascertainability "demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks omitted). Ascertainability is satisfied where a class is "identified by subject matter, timing, and location." *Id.* at 269-70. Plaintiff asserts that "this requirement is readily met in securities class actions, where class 'membership is based on objective, definite criteria'—here, the dates of shareholders' transactions of Twitter common stock." Pl's Mot. at 13. Defendants do not address

7

ascertainability. This Court finds that the implicit requirement of ascertainability is satisfied given the concrete timeframe for the Class Period.

### F. Superiority Under Rule 23(b)(3)

Plaintiff must also demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, a court examines Rule 23(b)(3)'s nonexclusive list of factors for consideration. The manageability of a class action is the most important of these factors. Fed. R. Civ. P. 11 23(b)(3)(D). As Plaintiff points out, securities fraud suits are "particularly well suited to class treatment." *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at \*1 (S.D.N.Y. Sept. 8, 2021); *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at \*2 (S.D.N.Y. Mar. 23, 2020) ("Courts have consistently held that claims alleging violations of Sections 10(b) and 20(a) of the Exchange Act are especially amenable to class certification.")

Defendants do not take issue with superiority. As Plaintiff points out, "a class action is easily manageable, provides redress to investors who would otherwise be unable to pursue individual claims, and is least taxing on judicial resources." Pl. Mot. at 3. The Court finds this prong of 23(b)(3) satisfied.

### G. Predominance

"The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiffs must demonstrate that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are *more substantial* than the issues subject only to individualized proof."

8

*Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002). Predominance does not require the absence of individualized damages, but plaintiff's damages methodology "must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

Defendants contend that Plaintiff cannot satisfy the predominance requirement for two reasons: 1) because Plaintiff is unable to establish the requisite reliance needed for a securities fraud claim under Section 10(b) and 2) because Plaintiff has not proposed a common damages methodology that can reliably calculate class-wide damages. The Court will take each of Defendants' arguments in turn.

1. Reliance

To support a claim under Section 10(b), a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) *reliance* upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 462-63 (2013) (internal citation omitted) (emphasis added).

There are three ways to establish reliance. The traditional and most direct way of showing reliance is establishing that the plaintiff was aware of the statement and traded in the stock based on the misrepresentation. The other two ways rely on presumptions established by the Supreme Court, the *Affiliated Ute* presumption and the *Basic*/fraud on the market presumption. *See Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) The *Affiliated Ute* presumption "allows the element of reliance to be presumed in cases involving primarily omissions, rather than affirmative misstatements, because proving reliance in such cases is, in many situations, virtually impossible." *Id*. The fraud on the market presumption "permits reliance to be presumed in cases based on misrepresentations if the plaintiff satisfies certain requirements." *Id*.

9

The Plaintiff relies on the presumptions in his putative class action. Both presumptions can be rebutted by Defendants where a preponderance of evidence shows that Plaintiff would have bought the stock at the same price "even had [the plaintiff] been aware that the stock's price was tainted by fraud." *Basic Inc. v. Levinson*, 485 U.S. 224, 269 (1988).

a) *Affiliated Ute* Presumption

Under *Affiliated Ute,* a presumption of reliance exists where a plaintiff's trading action arises "primarily" from a "failure to disclose" and as a result, reliance would be impossible to prove as a practical matter. 406 U.S. at 153. *Affiliated Ute* "does not apply to . . . half-truths, nor does it apply to misstatements whose only omission is the truth that the statement misrepresents." *Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017); *accord In re DiDi Glob. Inc. Sec. Litig.*, 2025 WL 1909295, at *12 (S.D.N.Y. July 7, 2025).

Defendants contend that Plaintiff amended its complaint to make clear it was *no*t relying mainly on omissions, to avoid the impact of *Macquarie*, 601 U.S. 257 (2024). To support this, Defendants cite to the section of Plaintiff's Amended Complaint outlining the alleged scheme as one in which "Musk[] steadily increase[ed] ownership in Twitter and misled investors through misdirection and half-truths," Am. Compl. at ¶ 227. Defendants argue that Plaintiff is trying to "have it both ways" by now trying to certify a class using the *Affiliated Ute* presumption. Defendants' Opposition ("Deft. Opp.") at 18. Defendants acknowledge that Courts have addressed that it can sometimes be difficult to determine whether a scheme is based primarily on omissions or misstatements/misrepresentations. *See Waggoner*, 875 F.3d at 96; *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2 F.4th 1199, 1205 (9th Cir. 2021). In these "mixed" cases, Courts analyze whether the scheme is primarily one of nondisclosure or affirmative misstatements. *Id.* at 1204 (internal citations omitted).

10

Although a Plaintiff does not have to choose between the *Affiliated Ute* and *Basic* presumptions,[3] deciding the difficult question of whether the scheme primarily involves omissions is unnecessary because the *Basic* presumption clearly applies.

Plaintiff responds to Defendants' arguments by pointing out that Defendants do not address the materiality of the omission of Musk's interest in Twitter. Assuming Plaintiff's allegations are true, for several months, Musk did not disclose his interest in Twitter. This is analogous to the omission the Court found in *Puddu v. NYGG (Asia) Ltd.,* 2022 WL 2304248, at *4 (S.D.N.Y. June 27, 2022) ("Claims are based on the defendants' failure to disclose Wey's relationship with [the company that had stock at issue]"). This Court's Opinion, denying in part Defendants' Motion to Dismiss, held that Plaintiff has sufficiently plead that Defendants engaged in separate acts, besides just misstatements, in perpetuating their scheme. Order at 27-30, 42. For these reasons, the Court finds that Plaintiff meets the *Allied Ute* presumption, so there are common questions of law and fact that predominate over individual ones.

b) *Basic*/Fraud-on-the-Market Presumption

Having already determined that the predominance requirement of Rule 23(b)(3) is satisfied, the Court will only briefly address the Parties' positions on the fraud-on-the-market presumption. Plaintiff also argues it can rely on the fraud-on-the-market presumption of reliance outlined in *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988):

> In an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations. *Id.* (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–1161 (CA3 1986)).

---

[3] *See In re Credit Suisse Sec. Fraud Class Actions*, 350 F.R.D. 425, 450 (S.D.N.Y. 2025) (finding that the Second Circuit has not adopted an "either/or" rule requiring plaintiffs to choose between Basic and Affiliated Ute).

Plaintiff goes through the various factors courts analyze to show that the market it was operating in was efficient. *See* the five "*Cammer* factors" (*Cammer v. Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989)) as well as the "*Krogman* factors" (*Krogman v. Sterritt*, 202 F.R.D. 467, 477-78 (N.D. Tex. 2001).

Defendants attempt to rebut the fraud-on-the-market presumption by primarily pointing to testimony from their expert, Dr. Allen Ferrell, who stated that the alleged misrepresentations in Musk's two March 26, 2022 Tweets were not value-relevant information. *See* Ferrell Rep. ¶¶ 47-49. The Defendants assert that this means the Tweets did not impact the price of the Twitter stock. Defts' Opp. at 20.

The Basic presumption can be rebutted, even at the class certification stage. "For example, if a defendant could show that the alleged misrepresentation did not, for whatever reason, actually affect the market price, or that a plaintiff would have bought or sold the stock even had he been aware that the stock's price was tainted by fraud, then the presumption of reliance would not apply." *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 269, 134 S. Ct. 2398, 2408, 189 L. Ed. 2d 339 (2014). The Defendants must rebut the presumption by a preponderance of the evidence. *See* Waggoner v. Barclays PLC, 875 F.3d 79, 85 (2d Cir. 2017). Defendants attempt to rebut the presumption, arguing that Plaintiff never relied on the alleged fraud when making investment decisions and that this non-reliance subjects Plaintiff to unique defenses, which weigh against class certification. Defendants point to deposition testimony of Plaintiff's investment manager, Intech, who stated that information about Musk's statements did not affect the algorithm's decision to trade in the stock. This argument mischaracterizes the testimony and mischaracterizes the presumptions. The witness stated repeatedly that an important factor in the trading decision is market price. The algorithm does not receive information about public statements and make a determination as to whether those statements are true or false. Rather, the algorithm assumes that the information in the

12

marketplace that affects a stock's price is true. Nothing presented by Defendants in rebuttal demonstrates that Intech would have traded in a stock whose price was tainted by fraud.

Defendants have not done enough to rebut the *Basic* presumption, which holds that "when a stock trades in an efficient market and with defendant's alleged material misrepresentations publicly known, the Court can presume that the misrepresentation affected the stock price, and that the plaintiff bought the stock in reliance on defendant's misrepresentation." *In re Signet Jewelers Ltd. Sec. Litig.,* 2019 WL 3001084, at *11 (S.D.N.Y. July 10, 2019). Plaintiff's contention that Defendants never address market efficiency is persuasive combined with the Defendants' choice of testimony from Dr. Ferrell. As Plaintiff notes, Dr. Ferrell also stated that it would be difficult to see the effect of Musk's Tweet on the market the very next day. "A front-end analysis typically is not a sufficient basis standing alone for a price impact opinion." Ex. I, (Ferrell Tr.) at 78:2-80:20, 100:8-100:24. The Court finds the back-end effect of Musk's Tweets to satisfy the fraud-on-the-market presumption.

2.  Common Damages Methodology

The Second Circuit has held that *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) "does not preclude[] class certification where damages are not capable of measurement on a classwide basis." *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 409 (2d Cir. 2015). Plaintiffs need only "show that their damages stemmed from the defendant's actions that created the legal liability." *Sykes v. Mel S. Harris & Assocs.*, LLC, 780 F.3d 70, 88 (2d Cir. 2015); *Waggoner*, 875 F.3d at 106 (same). Plaintiff does not even need to lay out its damages methodology in a motion for certification under Rule 23. *Roach* at 402. Therefore, the Court will not address Defendants' arguments on this issue when assessing the predominance requirement.

Because the Court finds that Plaintiff can use the *Allied Ute* and *Basic* presumptions, predominance is satisfied.

13

**G. Typicality**

Now turning to typicality, the Parties strongly disagree as to whether this requirement is satisfied. Typicality "requires that the claims of the class representatives be typical of those of the class." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). A putative class satisfies this requirement "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). But "[A] representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Natural Gas*, 231 F.R.D. at 184 (quoting *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 95 (S.D.N.Y. 1998)).

Plaintiff argues that it satisfies the typicality requirement because, like other Class members, it suffered damages by being cheated out of the true value of its Twitter securities by trading at prices that were artificially deflated by Defendants' scheme and material misrepresentations. Meanwhile, Defendants contend that Plaintiff is subject to unique defenses in that it did not rely on Musk's misstatements or omissions when making its sale of Twitter stock.

Notably, Courts in this Circuit do not apply the unique defenses rule rigidly. *See Hasthantra v. CleanSpark, Inc.,* No. 21-CV-511 (LAP), 2025 WL 2717308 (S.D.N.Y. Sept. 24, 2025) (citing other cases to support that this rule should be flexible and not an impediment for Plaintiffs to certify classes). In *Hasthantra,* as in this case, Defendants argued that the Plaintiff was atypical because it was not subject to reliance presumptions. But as the *Hasthantra* Court concluded, the Plaintiff was *not* atypical because "it is well established that where ... [a]

14

plaintiff[] allege[s] that [his] losses were the result of a sustained course of conduct that propped up defendant's stock price throughout the class period, the class may be represented by an individual who purchased his shares prior to the close of the class period." Id. at 6 (quoting *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 87 (S.D.N.Y. 2007), aff'd sub nom. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016)). Here, Plaintiff transacted during the Proposed Class Period and the purported losses suffered were the result of Musk's fraudulent scheme. Therefore, Plaintiff's claims are typical enough to satisfy this requirement.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Class Certification is granted. Plaintiff's Motion to Appoint Plaintiff as Class Plaintiff and Motion to Appoint Bernstein Litowitz as Class Counsel are granted.

Plaintiff's Motion for Oral Argument is DENIED. All pending Motions to Seal are GRANTED.

The Clerk of the Court is respectfully directed to terminate ECF Nos. 140, 144, 163, 192, 200, 201, 202, and 213.

**SO ORDERED.**

**Dated:** March 31, 2026

New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

15

| | | | |
|---|---|---|---|
| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
| | ) | ss.: | **BY OVERNIGHT FEDERAL** |
| COUNTY OF NEW YORK | ) | | **EXPRESS NEXT DAY AIR** |

I, Melissa Pickett, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

**On April 14, 2026**

deponent served the within: **DEFENDANTS' PETITION FOR PERMISSION TO APPEAL PURSUANT TO FED R. CIV. P. 23(f)**

**Upon:**

**Salvatore J. Graziano**
**Katherine M. Sinderson**
**Jeremy P. Robinson**
**Jonathan G. D'Errico**
**Emily A. Tu**
**Bernstein Litowitz Berger & Grossmann LLP**
**1251 Avenue of the Americas**
**New York, NY 10020**
**Phone: (212) 554-1400**
**salvatore@blbglaw.com**
**katie@blbglaw.com**
**jeremy@blbglaw.com**
**jonathan.derrico@blbglaw.com**
**emily.tu@blbglaw.com**

**Hon. Andrew L. Carter Jr.**
**Thurgood Marshall**
**United States Courthouse**
**40 Foley Square**
**New York, NY 10007**

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, enclosed in a properly addressed wrapper in an Overnight Next Day Air Federal Express Official Depository, under the exclusive custody and care of Federal Express, within the State of New York.

**Sworn to before me on April 14, 2026**

**/s/ Mariana Braylovskiy**     **/s/ Melissa Pickett**
 *Mariana Braylovskiy*     **Melissa Pickett**
 Notary Public State of New York
   No. 01BR6004935
 Qualified in Richmond County   **Job #  392283**
Commission Expires March 30, 2030